**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**Jamar SIMMONS, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 8, 2010.

Filed March 8, 2011.

Anne Palmer, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Aaron C. Finestone, Philadelphia, for appellee.

BEFORE: BENDER, OLSON and OTT, JJ.

OPINION BY OLSON, J.:

Appellant, the Commonwealth of Pennsylvania, appeals from an order entered on April 16, 2010, which granted Jamar Simmons' motion to suppress physical evidence. For the following reasons we reverse and remand for further proceedings.

The trial court set forth the relevant factual and procedural history as follows:

> In opposition to the motion [to suppress] the Commonwealth produced Philadelphia Police Officer Charles Galiczynski. He testified that on January 9, 2009, he was on a tour of duty for the 15th District in a marked car with a fellow officer when he arrested [Simmons] at about 6:45 p.m. in the 4600 block of North Penn Street. (N.T. 9/3/2008, p. 6–7). They had observed a vehicle traveling without brake lights being driven by a male and in which [Simmons] was a passenger. *Id.* at 8. They activated their lights and siren and the vehicle stopped, at which time Galiczynski observed [Simmons] "... make a movement towards the floor area in a downward motion and then coming backwards on the seat and then across his chest with his right arm to his left area of his jacket." *Id.* at 8–9. He continued with

> > I observed that motion. I then immediately told my partner that the male [Simmons] was making a movement as I got closer. At which time I did pat-down [Simmons], did a protective frisk, at which time I could see and feel a large bulge on his right chest area, at which time when I did the pat-down, I could feel multiple cylinder-shaped objects that was [sic] recognizable to me as narcotics packaging.... At which time—recognizing that based on my experience and training, I recovered a plastic bag which contained ... [what turned out to be cocaine in numerous vials].

> *Id.* at 9–10.

> He then testified that he had been a Philadelphia police officer for 12 years, that he was familiar with the area for that length of time, that it's a high crime, high drug area, that he had made hundreds of narcotics arrests in the 15th District, that he had made approximately 35 to 45 narcotics arrests in the area of 4600 Penn Street, of which about 15 involved crack cocaine, the majority of which were in plastic packets of vials. *Id.* at 12–13. He described making the observation of [Simmons] while he was a passenger in the Police Ford Explorer, [Simmons] being a passenger in a Mercury Marquis, and as he was exiting his vehicle and approaching [Simmons] and that [Simmons'] movements indicated to him that [Simmons] was attempting to conceal a weapon. *Id.* at 14–15. He conducted the pat-down while [Simmons] was still sitting in the vehicle "for safety reasons", patting him down on "his left breast side of his jacket" where he had "observed the bulge", feeling what he believed to be narcotics in numerous cylinder-shaped objects approximately one to one and a half inches long. *Id.* at 15–16. He clarified that when he saw the movements, he suspected a weapon and did a protective frisk for weapons, but when he felt it, he recognized it "to be what it was." *Id.* at 16.

> On cross examination the officer acknowledged that at the preliminary hearing he had testified that he had made the observations of [Simmons'] movements while he was still sitting in his police vehicle (*Id.* at 20), that he had opened the front passenger side car door where [Simmons] was sitting without asking [Simmons] to step outside of the vehicle (*Id.* at 22), and that, when he gave a statement to a police detective who was preparing a police report, he did not mention seeing a bulge before conducting the frisk (*Id.* at 24).

Trial Court Opinion, 8/3/2010, at 2–3.

Simmons filed a motion to suppress the evidence recovered as a result of the protective frisk. After a hearing and addi-

tional briefing, the motion to suppress was granted on April 16, 2010. This appeal followed.[1] All requirements of Pennsylvania Rule of Appellate Procedure 1925 have been satisfied in this matter.

■ The Commonwealth presents one issue for appeal:

Did the lower court err in suppressing evidence on the ground that police lacked reasonable suspicion where [Simmons], a passenger in a car that had been lawfully stopped, made furtive movements in reaching to the floor of the vehicle and then toward his chest, leading police to suspect that he might have a weapon?

Commonwealth's Brief at 2.

■ Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Powell*, 994 A.2d 1096, 1101 (Pa.Super.2010), *citing* Pa.R.Crim.P. 323(h); *Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984). When reviewing a decision from the suppression court, our responsibility is (1) to determine whether the record supports the factual findings of the court below, and (2) to evaluate the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Bull*, 382 Pa.Super. 559, 555 A.2d 1341 (1989). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution which when read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Hamlin*, 503

Pa. 210, 469 A.2d 137, 139 (1983). If the record supports the factual findings below, we are bound by those findings. *Commonwealth v. James*, 506 Pa. 526, 486 A.2d 376, 379 (1985).

■ However, while we are bound by the suppression court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Lagana*, 517 Pa. 371, 537 A.2d 1351, 1353 (1988). In the present case, both parties are in agreement as to the facts; therefore, the question which remains is whether the court committed an error in its legal conclusions drawn from those facts. *See Bull*, 555 A.2d at 1343.

In particular, the Commonwealth appeals the trial court's finding that the officers did not have a reasonable basis to conduct a protective frisk of Simmons. According to the Commonwealth, the trial court's holding was based upon an improper reading and application of this Court's *en banc* decision in *Commonwealth v. Reppert*, 814 A.2d 1196 (Pa.Super.2002). The Commonwealth argues that, contrary to the trial court's belief, the factual scenario in *Reppert* is significantly different from the facts of the instant matter and that, when one considers the totality of the circumstances in the instant matter, it becomes apparent that the police officers had a reasonable basis to conduct a protective frisk of Simmons. We agree.

■■ Specifically, "[i]t is hornbook law that the [F]ourth [A]mendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable

---

1. Within its notice of appeal, the Commonwealth certified in good faith that the trial court's order granting suppression of the evidence will terminate or substantially handicap its prosecution of this case. Therefore, though not from a final order, we have jurisdiction to consider this appeal. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985); *see also* Pa.R.A.P. 311(d), 904(e).

searches and seizures.'" *Commonwealth v. Baer,* 439 Pa.Super. 437, 654 A.2d 1058, 1059 (1994). Warrantless searches and seizures (such as occurred in this case) are unreasonable *per se,* unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception, the *Terry* "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." *Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 666 A.2d 323, 325 (1995); *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Terry* further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." *Terry,* 392 U.S. at 24, 88 S.Ct. 1868. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■■■ In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. *Terry,* 392 U.S. at 30, 88 S.Ct. 1868. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must

have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417–418, 101 S.Ct. 690. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. *Commonwealth v. Arch,* 439 Pa.Super. 606, 654 A.2d 1141, 1144 (1995). If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. *Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203, 206–207 (1994).

■■■ The *Terry* totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. *See Commonwealth v. Mesa,* 453 Pa.Super. 147, 683 A.2d 643, 646 (1996). Moreover, the principles of *Terry* apply to all occupants of the stopped vehicle, not just the driver. *See id.* (applying the principles of *Terry* to determine whether the police were permitted to conduct a pat down search of the passenger in a vehicle that was stopped pursuant to a motor vehicle violation). Indeed, as we have observed, "roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *In re O.J.,* 958 A.2d 561, 564 (Pa.Super.2008) (*en banc*), citing *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

In this matter neither side disputes that the vehicle in question was subject to a valid stop as a result of a brake light violation of the Pennsylvania Motor Vehicle Code. Therefore, we focus on whether, given the totality of the circumstances, Officer Galiczynski witnessed behavior that could lead him to reasonably believe that

Simmons, the passenger in the vehicle, may have been armed and dangerous.

The record in this matter establishes that the vehicle in question was stopped at night in a high drug and high crime area. Furthermore, Officer Galiczynski testified that prior to exiting his police vehicle, he witnessed Simmons, the passenger in the vehicle, reach down towards the floor and then reach across his chest. Officer Galiczynski, an officer with over 12 years of experience, believed that Simmons' movements were consistent with concealing a weapon, and warned his partner about his concern. Based upon that concern, when Officer Galiczynski reached Simmons' side of the vehicle, Officer Galiczynski frisked Simmons in the areas in which he witnessed the furtive movements. As a result of that frisk, Officer Galiczynski felt a bulge in Simmons' clothing that he immediately recognized to be packaged narcotics. Consequently, he seized the narcotics and arrested Simmons.

Under such circumstances, we hold that Officer Galiczynski's observation of furtive movements, within the scope of a lawful stop, led him to reasonably be concerned for his safety and therefore justified the *Terry* protective frisk. Indeed, on multiple occasions we have held that similar furtive movements, when witnessed within the scope of a lawful traffic stop, provided a reasonable basis for a protective frisk. *See e.g. Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721, 723 (1994); *In re O.J.*, 958 A.2d at 566; *Commonwealth v. Mack*, 953 A.2d 587, 591 (Pa.Super.2008); *Commonwealth v. Parker*, 957 A.2d 311, 316 (Pa.Super.2008); *Commonwealth v. Wilson*, 927 A.2d 279, 284–285 (Pa.Super.2007).

The trial court recognized the above precedent, but disregarded it based upon its mistaken belief that our *en banc* holding in *Reppert* invalidated the holdings in those cases. Trial Court Opinion, 8/3/2010, at 12–13. In its opinion the trial court quoted extensively from *Reppert* and incorrectly interpreted it to categorically hold that furtive movements are irrelevant to the consideration of whether officers have the necessary level of suspicion to justify a *Terry* stop and frisk. *Id.* at 4–13. *Reppert* made no such holding.

Rather, *Reppert* is distinguishable from this matter and the cited precedent because in *Reppert* the search and seizure in question took place after the lawful traffic stop had concluded. Specifically, in *Reppert* the defendant was a passenger in a vehicle which was lawfully pulled over for a registration sticker violation. *Reppert*, 814 A.2d at 1199. During a brief pursuit of the vehicle, the officer observed the defendant in the back seat engaged in movements suggestive of stuffing something into his pockets or between the seat cushions of the car. *Id.* Apparently, however, the defendant's movements did not significantly concern the officer, because rather than immediately frisk the defendant, he proceeded with the traffic stop. The officer interacted with the driver, and eventually accepted his explanation for the registration sticker violation, deciding not to issue a citation. *Id.* At that point, we concluded that the officer "had realized the purpose for the stop and had no further reason to detain the driver of the vehicle or its occupants under the guise of the original traffic infraction." *Id.* at 1203. Nevertheless, the officer then ordered the defendant to exit the back seat, at which time he observed bulges in the defendant's pockets. *Id.* at 1199. Claiming that he was concerned for his safety, the officer ordered the defendant to empty his pockets which revealed cash, narcotics, and a small scale. *Id.* The defendant was consequently arrested.

At trial, the defendant moved to suppress the materials emptied from his pockets based upon an inappropriate *Terry* stop and search. The Commonwealth attempted to justify that search and seizure based upon the furtive movements observed during the officer's pursuit of the vehicle. However, we rejected that argument, explaining that because the lawful traffic stop had concluded, any subsequent seizure and search of one of the occupants of the vehicle required a renewed showing of reasonable suspicion. *Id.* at 1202.[2] In *Reppert* we went on to hold that, given that the initial traffic stop had concluded, the defendant's pre-stop furtive movements, **without more,** did not provide the requisite renewed reasonable suspicion to seize and/or search the defendant. *Id.* at 1206.

Contrary to the trial court's interpretation, *Reppert* did not hold that furtive movements are irrelevant to the totality of the circumstances test set forth in *Terry*. When properly understood, *Reppert* stands for the proposition that pre-stop furtive movements, by themselves, may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of circumstances has established that the furtive movements did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention.

In contrast with *Reppert*, this case involved a single police encounter—a valid stop during which suspicious movements were observed. That suspicious behavior reasonably led Officer Galiczynski to believe that Simmons may have been concealing a weapon. Therefore, Officer Galiczynski had valid grounds to conduct a

protective frisk. Consequently, we reverse the trial court's suppression order and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

---

**2.** In support of that holding, we cited our Supreme Court's holding in *Commonwealth v. Sierra*, 555 Pa. 170, 723 A.2d 644 (1999), in which the Court required a renewed showing of suspicion before officers could undertake a subsequent investigative detention. *Id.* at 1205–1206. *Sierra* was also improperly interpreted by the trial court in this matter.