J-S38033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| KATHERINE LEIGH PREUSSER, | : | |
| | : | |
| Appellee | : | No. 18 EDA 2014 |

Appeal from the Order Entered November 27, 2013,
In the Court of Common Pleas of Delaware County,
Criminal Division, at No. CP-23-CR-0002915-2013.

BEFORE:  FORD ELLIOTT, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED SEPTEMBER 23, 2014**

Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), appeals from the order entered on November 27, 2013, that granted the suppression motion filed by Appellee, Katherine Leigh Preusser.  We affirm.

The suppression court made the following findings of fact:

1. Katherine Preusser, hereinafter "Defendant," was arrested and charged with Possession of a Small Amount of Marijuana for Personal Use,[1] Possession of Drug Paraphernalia,[2] Corruption of Minors,[3] and Furnishing Liquor to Minors[4] relating to an incident that occurred on March 23, 2013 at approximately 11 p.m. [The arrest was conducted] by Trooper Jerrold Hatfield of the Pennsylvania State Police.

[1] 35 [P.S.] §780-113(a)(31).

[2] 35 [P.S.] §780-113(a)(32).

[3] 18 Pa.C.S. §6301(a)(1)(i).

[4] 18 Pa.C.S. §6310.1(A).

2. On July 2, 2013, Defendant, through counsel, filed a Motion to Suppress, seeking to suppress all physical evidence, and statements from Defendant's arrest.

3. On November 1, 2013, a Suppression Hearing was held on Defendant's "Omnibus Pretrial Motion."

4. Trooper Hatfield, a 5½-year Patrol Trooper for Troop K Media Patrol Barracks of the Pennsylvania State Police, testified at the Suppression Hearing. (N.T. 11/1/13 p. 8).

5. Trooper Hatfield testified that at approximately 11:00 p.m. on March 23, 2013, a Saturday night, he was on duty, in uniform, and operating a marked Pennsylvania State Police patrol vehicle. The Trooper was driving eastbound on Baltimore Pike in Middletown Township, Delaware County, Pennsylvania approaching the area of the Franklin Mint property.

6. The Trooper observed a vehicle pulling suddenly from the right-hand lane of travel onto the shoulder and then into a driveway. The driveway leads to a business that has been closed "called the Lobster Pot." The property has been the site of numerous break-ins since its closing. (N.T. 11/1/13 p. 9).

7. Earlier in 2012, Trooper Hatfield handled a break-in at the Franklin Mint property which was approximately 75 yards from the Lobster Pot property and during that incident, scrap metal was stolen from the Franklin Mint Museum. There have been numerous incidents in the area, approximately 1-½ mile stretch along Baltimore Pike, wherein the buildings have been stripped of all their copper and scrap metal. The area has been posted with 'no trespassing' signs.[5] (N.T, 11/1/13 pp. 8-12).

> [5] There was a videotape of the Trooper's stop of Defendant's vehicle and it was admitted into evidence without objection as DS-1, (N.T. 11/1/13 p.105).[1]

---

[1] The video recording of this incident was not included in the certified record, and therefore, we did not consider it in rendering our decision. **See**

8. The Defendant's vehicle pulled into a driveway that led to a building at the end of the driveway. The building was the site of a former business called the "Lobster Pot". The Trooper testified: "as soon as I saw the vehicle attempt to go up the driveway, I activated the lights and siren of my vehicle and pulled behind it." (N.T. 11/1/13 p. 13). As the vehicle attempted to travel down the driveway, once the Trooper positioned his vehicle behind it, the vehicle attempted to back down the driveway towards the shoulder of the highway. Then, Trooper Hatfield stopped his car, exited and approached the vehicle. The Trooper made a driver-side approach of the vehicle and asked the driver for his license, registration and insurance.

9. The driver was a Minor, who produced a Pennsylvania Junior Learner's Permit. The Permit does not allow the new driver to operate a vehicle after 11 p.m. (N.T. 11/1/13 pp. 13-15). The Minor-driver told Trooper Hatfield that they pulled over because his license had expired and the Defendant was going to begin driving. (N.T. 11/1/13 p. 39). Trooper Hatfield questioned the Minor about his whereabouts that evening. The Minor replied that he was coming from the Granite Run Mall Movie Theater and that his home was in Folsom, Pennsylvania. If he had left the Movie Theater and headed directly home he was coming from the wrong direction. The Trooper asked him what movie he had seen and he replied "The Last Oz" (N.T. 11/1/13 pp. 17-18).

10. At that point, he asked the Defendant, the front-seat passenger, to step out of the vehicle. As the Defendant stepped out of the vehicle, Trooper Hatfield observed "two open beer cans between the passenger seat and the door, so when she opened the door they were still lying next to the seat." (N.T. 11/1/13 p. 16). The Defendant told the Trooper that they had seen a romantic comedy movie in Chadds Ford, Pennsylvania, but she did not recall the name of the movie. (N.T. 11/1/13 p. 17). When the Defendant was asked what her relationship was to the driver, she replied that she was a friend of the driver's

---

***Commonwealth v. Edwards***, 71 A.3d 323, 324 n.1 (Pa. Super. 2013) (stating that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal and, for purposes of appellate review, what is not of record does not exist).

mother through a school connection. (N.T. 11/1/13 p. 18). She told the Trooper the vehicle was hers. "She said it was registered to her ex and it was in the process of being transferred over to her." (N.T. 11/1/13 p. 19).

11. A third person, a Minor female, was in the rear seat of the car. She was asked to exit the vehicle. She provided the Trooper with her Ridley High School identification card and told the Trooper that she was 17 years old. Trooper Hatfield questioned her about her whereabouts that evening. She replied that they were coming from the Granite Run AMC Theater and that they had just seen the movie "The Last Aw, not the Last Oz." (N.T. 11/1/13 p. 19). The Trooper testified that she smelled of alcohol. He gave her a PBT, [portable] breath test, and her reading was .022, indicating that she tested positively for some consumption of alcohol.

12. At this point, the Defendant was arrested, taken into custody and a tow was called for the vehicle. The Defendant was arrested for Furnishing Alcohol to Minors. A search of the vehicle located: a small amount of marijuana in the glove box, a water bong behind the driver's seat, two cold beer cans located beside the passenger seat, and a partially consumed beer that was located in the rear seat compartment.[6] A search was conducted because it was police department policy that when a vehicle was towed it must be checked for valuables or contraband. (N.T. 11/1/13 pp. 22-23).

> [6] The Trooper's search of the vehicle also located some unidentified pills in the trunk. However, they were sent to the lab, and they came back "as not a controlled substance" allergy pills. (N.T. 11/1/13 p. 45).

13. Trooper Hatfield testified on cross-examination that he did not get any 911 calls, or radio calls about burglaries on Baltimore Pike on the evening of March 23, 2013. He did not get any radio calls about burglaries at the former Lobster Pot on Baltimore Pike that night. (N.T. 11/1/13 p. 25). He did not get any calls about a silver, Toyota Corolla (a description of the Defendant's vehicle) on that evening. When Trooper Hatfield first observed the Defendant's vehicle it was approximately 3 to 4 car

lengths ahead of his vehicle and it was traveling within the speed limit. (N.T. 11/1/13 p. 27). The driveway that the Toyota entered contained a brick entrance-way within the first car length of the driveway. There was a 'no trespassing' sign posted on the brick entrance-way for that driveway that may not have been visible from Baltimore Pike but would be visible once the vehicle was stopped in the driveway. (N.T. 11/1/13 pp.29-30). The Trooper testified that this area of Baltimore Pike is not very well lit. (N.T, 11/1/13 p. 31).

14. When Trooper Hatfield first observed the Defendant's Toyota, it made an abrupt lane change from its lane onto the shoulder and into the driveway. The vehicle was approximately one or two car lengths away, when the Trooper activated his spotlight. The Toyota stopped within one car length of the driveway. As soon as the vehicle pulled into the driveway, the Trooper activated his lights and pulled in behind it. Once the Trooper had pulled in behind the Defendant's vehicle, the vehicle was not free to leave. "Q. So at this point do you feel that this Corolla is free to leave and just back out away from your car? A. No." (N.T. 11/1/13 p. 33); (N.T. 11/1/13 pp. 25-31).

15. The Trooper testified that he pointed his flashlight at the Minor-driver and asked him to step out of the vehicle. The Minor had a Junior Driver's license, which does not allow the new driver to drive after 11 p.m. The Minor told the Trooper that the reason they pulled the vehicle over was due to his license expiring, the Defendant was going to begin driving. (The Defendant had a nonrestricted license). The stop occurred just after 11 p.m. The Trooper asked the driver if he had been drinking and he replied that he had not. When the Trooper made initial contact with the Minor-driver his eyes appeared bloodshot. The Trooper administered a PBT, portable breath test, to him and it indicated that he had not been drinking that night. (N.T. 11/1/13 p. 43).

16. Subsequently, the Trooper walked to the passenger-side front door and asked the Defendant to exit the vehicle. She complied. "At the moment she opened the door, that's when I was able to observe the beer cans." (N.T. 11/1/13 p. 37).

17. The Trooper testified that he was never in fear for his own safety during the traffic stop. (N.T. 11/1/13 p.40). The Defendant was an adult female and the driver was a male and the rear-passenger was a female, both 17-year-old Minors.

18. The Defendant never gave the Trooper consent to search the vehicle or trunk, nor did he ever obtain a warrant to search the vehicle or trunk. (N.T. 11/1/13 p.41).

19. At the Suppression Hearing, as the parties viewed the videotape of the incident, the parties agreed that: "...the vehicle was about a car length up the driveway prior to the illumination of the vehicle." (N.T. 11/1/13 p.55). As the parties continued to view the videotape the Trooper testified as follows:

> Q. You put your lights on, the car begins to back up. And you're telling this Court that at this point with your lights on with the torch illuminating the interior of this vehicle this car is trying to back out and you're directly behind him but this vehicle is free to leave? A. It was not free to leave... He physically could have… Q. They're not from a legal standpoint free to leave, correct? A. Correct. Q. Even if they could physically through some fancy maneuvering get around you? A. Correct. Q. At this point you've observed no violations of the motor vehicle code, right? A. Correct. (N.T. 11/1/13 pp. 55-57).

[20]. The Trooper also testified that he had no radio calls that night that this car had committed any crimes. The last incident that he had handled with respect to a crime committed in the area, which was about 75 yards from the Lobster Pot property, was in 2012. (N.T. 11/1/13 p.57).

Suppression Court Order, 11/27/13, at 1-5.

Based on these findings the suppression court concluded that Trooper

Hatfield lacked reasonable suspicion to stop Appellee's vehicle and conduct

an investigatory detention.  Suppression Court Order, 11/27/13, at 8.  The Commonwealth filed a timely appeal.[2]

On appeal, the Commonwealth raises the following issues for this Court's consideration:

> Did the trial court err by granting [Appellee's] motion to suppress the evidence?
>
> > 1. Did the trial court err by concluding as a matter of law that the police lacked reasonable suspicion to believe that criminal activity was afoot?
> >
> > 2. Did the trial court err by concluding as a matter of law that the police obtained all evidence as a result of the purported unconstitutional investigative detention and, pursuant to Wong Sun[3] and the fruit of the poisonous tree principle, the evidence should be suppressed?

The Commonwealth's Brief at 1.[4]

We begin by setting forth our standard and scope of review:

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the

---

[2] The Commonwealth may appeal from an order that does not end the entire case if it certifies in its notice of appeal that the order will terminate or substantially handicap the prosecution.  **Commonwealth v. Lark**, 91 A.3d 165, 166 n.1 (Pa. Super. 2014); Pa.R.A.P. 311(d).  The Commonwealth included this certification in its notice of appeal.  Notice of Appeal, 12/18/13.

[3] **Wong Sun v. United States**, 371 U.S. 471, 488 (1963) (which stands for the proposition that "if evidence is recovered as a result of exploitation of primary illegality, evidence must be suppressed as fruit of poisonous tree.").

[4] The argument portion of the Commonwealth's brief combines these issues into one discussion.  Because these issues are interrelated, we shall address the Commonwealth's claims of error concurrently as well.

defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

***Commonwealth v. Hudson***, 92 A.3d 1235, 1241 (Pa. Super. 2014) (citations omitted).

At the outset, we note that there are three distinct levels of interaction between law enforcement and the general public. The first level is the mere encounter, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or respond. ***Commonwealth v. Clinton***, 905 A.2d 1026, 1030 (Pa. Super. 2006). The second level is the investigative detention, which must be supported by reasonable suspicion. ***Id***. Finally, the third level is an arrest or custodial detention, which must be supported by probable cause. ***Id***.

At issue in the case at bar is whether there was reasonable suspicion to conduct the investigative detention. In defining "reasonable suspicion," this Court has explained:

Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from

those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Chambers*, 55 A.3d 1208, 1215 (Pa. Super. 2012). "If either the initial stop or the search is found to be unreasonable, the remedy is to exclude the evidence derived from the illegal government activity as fruit of the poisonous tree." *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011); *Wong Sun*, 371 U.S. at 488.

Here, the Commonwealth argues that the suppression court applied an improper legal analysis to the evidence presented. The Commonwealth's Brief at 19. The Commonwealth claims that the suppression court did not properly consider the totality of the circumstances. *Id*. at 20-22. Additionally, the Commonwealth argues that when the evidence is viewed through the eyes of an experienced police officer, reasonable suspicion was established. *Id*. We disagree.

The suppression court considered the totality of the circumstances and correctly applied the proper standard and legal analysis relevant to investigative detentions. We reiterate that the record reveals that Trooper Hatfield saw a vehicle abruptly leave the roadway on a dimly lit street near an area where there had been vandalism the previous year, and the trooper

-9-

conceded that no motor vehicle violation was observed. While the trooper could have approached the vehicle to check on the safety of the occupants, or in an attempt to discern the occupants' intentions, as a mere encounter where the occupants of the car would have been free to leave, the trooper instead activated his emergency lights and seized the vehicle prior to any indication of criminality.[5] There is no support for the Commonwealth's position that the trooper was reasonable in his conclusion that criminal activity was afoot. As noted above, this Court is cognizant that the totality of the circumstances and the police officer's experience factor into the determination as to when reasonable suspicion exists. **Chambers**, 55 A.3d at 1215. However, the evidence on the record before us reveals only that the trooper had a hunch that the occupants of this car may have intended to vandalize property in the area. Pursuant to our standard of review, we discern no error and conclude that the suppression court was correct in its conclusion.

Moreover, because we conclude that the suppression court was correct in finding that the initial stop of the car was illegal, the subsequently discovered evidence was correctly suppressed as fruit of the poisonous tree. **Simmons**, 17 A.3d at 403; **Wong Sun**, 371 U.S. at 488. Accordingly, we

---

[5] Trooper Hatfield testified that Appellee and the occupants of the vehicle were not free to leave. N.T., 11/1/13, at 33.

-10-

conclude that the Commonwealth is entitled to no relief on appeal, and we affirm the suppression court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2014