J-S58002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD BURKE | : | |
| | : | |
| Appellant | : | No. 1630 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0011511-2017

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED DECEMBER 20, 2019**

Appellant, Ronald Burke, appeals from the judgment of sentence entered on October 18, 2018, in the Court of Common Pleas of Allegheny County, following his conviction of one count each of possession of heroin and crack cocaine.[1]  On appeal, Burke claims the trial court erred in denying his motion to suppress because the police did not have reasonable suspicion to conduct a wingspan search for officer safety in the area of the car where Burke was sitting.  After review, we affirm.

In the evening of March 3, 2017, City of McKeesport Police Officer Dante Diberadin stopped a vehicle after he observed it make a right turn from a left-turn only lane. As he approached the vehicle, he saw Burke, the passenger in

---

[1] 35 P.S. § 780-113(a)(16).

the vehicle, place an object furtively under his seat. Concerned for his safety, Officer Diberadin removed Burke and the driver from the vehicle and performed a search of the vehicle. He found heroin and crack cocaine.

Burke moved to suppress the narcotics. After a suppression hearing, the court denied the motion to suppress, and the court held a bench trial. The trial court found Burke guilty of both charges and immediately sentenced him to an aggregate term of incarceration of 6-12 months' imprisonment.

Burke filed a timely notice of appeal, and filed a timely Rule 1925(b) statement.

In his only issue appeal, Burke contends the trial court erred by denying his motion to suppress the heroin and crack cocaine found during Officer Diberadin's search of the vehicle. Burke maintains the "police did not have reasonable suspicion to conduct a wingspan search for officer safety of the area where Mr. Burke was seated in the vehicle[.]" Appellant's Brief at 6. We disagree.

In reviewing a denial of a motion to suppress, this Court's role is to decide:

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court

turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. . . . Our scope of review is limited to the evidence presented at the suppression hearing.

*Commonwealth v. Thran*, 185 A.3d 1041, 1043 (Pa. Super. 2018) (citations omitted), *appeal denied*, 195 A.3d 558 (Pa. 2018).

Here, Burke does not challenge the initial stop of the motor vehicle. Moreover, he concedes the police can request the driver and any passengers exit the car. *See* Appellant's Brief, at 14. However, he argues the police did not have reasonable suspicion to conclude either Burke was in possession of a weapon or that he might gain control of one. *See id.* He maintains furtive movements are not enough to establish reasonable suspicion and relies on this Court's decision in *Commonwealth v. Reppert*, 814 A.2d 1196, 1205 (Pa. Super. 2002) (*en banc*) to support his claim. *See* Appellant's Brief, at 13. For the reason discussed below, we find Burke's reliance on *Reppert* is misplaced.

In *Commonwealth v. Simmons*, 17 A.3d 399 (Pa. Super. 2011), this Court stated:

> [An officer]'s observation of furtive movements, within the scope of a lawful stop, led him to reasonably be concerned for his safety and therefore justified the *Terry*[2] protective frisk. Indeed, on multiple occasions we have held that similar furtive movements, when witnessed within the scope of a lawful traffic stop, provided a reasonable basis for a protective frisk.

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Id.*, at 404 (citations omitted); *see also in re O.J.*, 958 A.2d 561, 566 (stating defendant's "rapid and furtive hand movements over the console indicated that he may have been hiding a weapon in that location[;]" "the police officer was permitted to engage in a search of that compartment for his own protection[;]" "constitutional safeguards do not require an officer to gamble with his life[.]").

Despite this, this Court has explained:

[P]re-stop furtive movements, by themselves, may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of circumstances has established that the furtive movements did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention.

*Simmons*, 17 A.3d at 405; *see also Commonwealth v. Moyer*, 954 A.2d 659, 670 (Pa. Super. 2008) (*en banc*) (stating "[f]urtive movements and nervousness, standing alone, do not support the existence of reasonable suspicion).

In sum, the Commonwealth must both show the police saw furtive movements during the stop and that there were additional reasons for them to be concerned about the presence of weapons in order to demonstrate reasonable suspicion. *See Commonwealth v. Buchert*, 68 A.3d 911, 916-17 (Pa. Super. 2013).

At the suppression hearing, the Commonwealth presented the testimony of Officer Diberadin. He was on routine patrol at night along Wall Street in the City of McKeesport. N.T. Suppression Hearing, 10/18/18, at 4-6. This was a high-crime area; Officer Diberadin made over 500 arrests there and knew about shootings near the location of the motor vehicle stop. *See id.* at 5-6.

While on patrol, Officer Diberadin observed a vehicle make a right hand turn from a left turn only lane, he further observed that the vehicle did not have a license plate. *See id.* at 6. Officer Diberadin pulled the vehicle over and approached it; when he got close to the vehicle, he saw a temporary Ohio registration sticker on the back seat of the car. *See id.*

As he spoke with the driver, Officer Diberadin saw Burke, the front-seat passenger and the only other person in the car, reach down and place an unknown object under his seat. *See id.* at 7-8. Concerned for his safety, once other officers arrived on the scene, Officer Diberadin had both the driver and Burke removed from the car, handcuffed, and detained at the rear of the vehicle. *See id.* at 10-11.

The Commonwealth next presented the testimony of City of McKeesport Police Lieutenant (then Sergeant) Joshua Alfer. Lieutenant Alfer also participated in the motor vehicle stop. *See id.* at 13. He was familiar with the high-crime area of the traffic stop, and knew about several homicides close by. *See id.* at 14. When he arrived at the scene, both the driver and Burke

were still in the car; he observed Burke reach towards the bottom of the vehicle. *See id.*

He ordered Burke to stop and keep his hands in sight. *See id.* at 14. Burke ignored the order and again reached under his seat. *See id.* at 14-15. Lieutenant Alfer again ordered Burke to keep his hands in sight. *See id.* at 15. Burke's movements concerned Lieutenant Alfer because "I have made numerous arrests where the defendant has reached down under the seat and towards the center console of the vehicle, where there have been firearms along with drugs." *Id.*

The Commonwealth then recalled Officer Diberadin. He testified that following removal of the driver and Burke from the car, he performed a wingspan search of the passenger seat area. *See id.* at 22. He found 50 stamp bags of heroin and a sandwich bag of crack cocaine under the passenger seat. *See id.* at 23.

Here, as discussed in detail above, Burke made at least two separate furtive movements during the traffic stop. Officer Diberadin observed Burke reach down and place something under his seat. Lieutenant Alfer also observed Burke reaching down under the seat; when he ordered him to stop and put his hands at eye level, Burke disobeyed and made another furtive movement under the seat.

The traffic stop took place at night and in a high crime area. This combination of factors provided a reasonable basis for the police to suspect

- 6 -

that there might be a weapon in the vehicle.  *See Bouchert*, 68 A.3d at 916-17 (holding sufficient reasonable suspicion to justify wingspan search where traffic stop took place at night, police observed passenger making furtive movements during stop, and defendant behaved in nervous manner).

Moreover, we find Burke's reliance on our decision in **Reppert** misplaced.  In **Reppert**, an unmarked police car followed a car with expired inspection and registration stickers; prior to initiating the traffic stop, the police officer observed one of the passengers move his head and shoulders. *See id.* at 1199.  Throughout the traffic stop, during which the police decided not to issue a citation, the police officer noted the defendant seemed nervous but did not see any additional movements.  *See id.*

However, because of the pre-stop movement, the officer eventually ordered the defendant out of the vehicle and observed bulges in the pockets of his jacket; although the defendant initially refused to empty his pockets, he ultimately complied, removing cash, drugs, and drug paraphernalia.  *See id.*  In the decision, this Court largely discussed the issue of whether the traffic stop had already concluded when the police ordered the defendant to exit the car and, after concluding that it had, whether the police had justification for an additional seizure.  *See id.* at 1202-04.  Ultimately, the **Reppert** panel concluded, under the particular circumstances in the case, the police did not possess a sufficient basis to conduct a search based on a single

furtive movement, which took place before the police even attempted to stop the car.  **See id.** at 1206.

However, as we have since pointed out, the decision in **Reppert** applies to a narrow set of circumstances:

> [w]hen properly understood, **Reppert** stands for the proposition that pre-stop furtive movements, by themselves, may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of circumstances has established that the furtive movements did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention.

**Buchert**, 68 A.3d at 914-15 (citation omitted).

Here, the circumstances are entirely different from **Reppert** as this case involves a situation where Burke made at least two separate furtive movements during the traffic stop, and made one of the movements after the police specifically ordered him to stop moving his hands, thus directly raising concerns for officer safety during a nighttime stop in a high-crime area. Therefore, we find our decision in **Reppert** is inapplicable in the current matter.

For the reasons discussed above, we find the record supports both the trial court's factual findings and its legal conclusions.  Burke's only issue on appeal does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2019