J-A04005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MYRON BOOKER | : | |
| | : | |
| Appellant | : | No. 1127 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 19, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002775-2018,
MC-51-CR-0008062-2018

BEFORE:   PANELLA, P.J., STRASSBURGER, J.*, and COLINS, J.*

MEMORANDUM BY PANELLA, P.J.:                     **FILED MARCH 13, 2020**

Myron Booker challenges the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his convictions for possession of cocaine and possession with intent to deliver.[1] On appeal, Booker claims the trial court erred in concluding police had reasonable suspicion to conduct a protective search of his vehicle for weapons. After careful review, we affirm.

Philadelphia Police Officers Robert Filler and Oswaldo Toribio were on routine patrol, around dusk, on the 3100 block of North 2nd Street when they spotted a white SUV with a defective passenger brake light. Due to the motor

_____

* Retired Senior Judge assigned to the Superior Court.

[1] *See* 35 P.S. § 780-113 (a)(16); 35 P.S. § 780-113 (a)(30).

vehicle infraction, they activated their emergency lights and pulled the SUV over.

Booker initially stopped his vehicle in the travel lane and made a movement toward the center console. The police officers then directed Booker to pull his car to the side of the road, which he did. There, Booker motioned once again toward the center console.

Officer Filler, who was in the front passenger seat of the police cruiser, observed Booker's furtive movements. Concerned for his safety, Officer Filler approached the passenger side of Booker's car and immediately opened the front passenger door. There, he observed in plain view a clear plastic bag on the floorboard containing what appeared to be narcotics.

Officer Toribio, who had approached the SUV on the driver's side, removed Booker from his vehicle and placed him inside the patrol car. Thereafter, a subsequent search of the SUV was conducted during which Officer Filler found packets of cocaine from under the cup holder in the center console.

Booker moved to suppress the cocaine, claiming the police did not possess reasonable suspicion to search his vehicle for weapons. After a suppression hearing, the court denied the motion to suppress, and Booker proceeded to a bench trial. The trial court found Booker guilty of both charges and sentenced him to 4-10 years' imprisonment.

Booker filed a timely post-sentence motion, which was denied without a hearing. This timely appeal followed.

In his only issue, Booker contends the trial court erred in denying his motion to suppress the cocaine found during Officer Filler's search of the vehicle. **See** Appellant's Brief, at 9.

In reviewing the denial of a suppression motion, we must determine whether the record supports the lower court's factual findings and whether the legal conclusions drawn from those facts are correct. **See Commonwealth v. Raglin**, 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions *de novo*. **See Commonwealth v. Hughes**, 836 A.2d 893, 898 (Pa. 2003).

Here, Booker does not challenge the legality of the underlying traffic stop. Instead, he argues the police did not have reasonable suspicion to conclude either he was in possession of a weapon or that he might gain control of one. **See** Appellant's Brief, at 9. Booker maintains slight body movements and the location of where the traffic stop occurred are not enough to establish reasonable suspicion and relies on this Court's decision in **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa. Super. 2013) (*en banc*) to support his claim. **See** Appellant's Brief, at 9, 14.

In evaluating whether Officer Filler was justified in conducting a protective search for weapons, we employ the standard the Supreme Court of Pennsylvania adopted in **Commonwealth v. Morris**, 644 A.2d 721 (Pa. 1994).

Our Supreme Court in *Morris* applied the test set forth in *Michigan v. Long*, 463 U.S. 1032 (1983), and held that the search of the passenger compartment of an automobile is permissible if a police officer possesses reasonable suspicion that the suspect may gain immediate control of a weapon. *See Morris*, 644 A.2d at 723. In reaching this decision, the Court explained that, since roadside encounters are inherently dangerous, "[o]ur constitutional safeguards do not require an officer to gamble with his life." *Id.*, at 724.

Indeed, due to the heightened risk of danger, we have held that furtive movements, when witnessed in the scope of a lawful traffic stop, provide a reasonable basis for the police to conduct a protective frisk. *See Commonwealth v. Simmons*, 17 A.3d 399, 404 (Pa. Super. 2011); *see also In re O.J.*, 958 A.2d 561, 566 (Pa. Super. 2008) (*en banc*) (stating defendant's "rapid and furtive hand movements over the console indicated that he may have been hiding a weapon in that location" and "the police officer was permitted to engage in a search of that compartment for his own protection").

However, we have clarified that "pre-stop furtive movements, by themselves, [do not] . . . justify . . . [a] search . . . where the totality of the circumstances . . . established that the furtive movement did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention." *Simmons*, 17 A.3d at 405; *see also Commonwealth v.*

*Moyer*, 954 A.2d 659, 670 (Pa. Super. 2008) (*en banc*) (finding "[f]urtive movements and nervousness, standing alone, do not support the existence of reasonable suspicion").

Therefore, the Commonwealth must both show the police saw furtive movements during the stop and that there were additional reasons for them to be concerned about the presence of weapons in order to demonstrate reasonable suspicion. *See Commonwealth v. Buchert*, 68 A.3d 911, 916-917 (Pa. Super. 2013).

Here, as discussed above, Booker made two separate furtive movements during the traffic stop. He was observed motioning toward the center console while stopped in the traffic lane. *See* N.T., Suppression Hearing, 11/29/18, at 9. He was also seen motioning toward the center console after parking his car on the side of the road. *See id*. As a result, these furtive movements prompted Officer Filler to believe Booker had access to a firearm. *See id*., at 12.

In addition, the stop occurred at dusk on North 2nd Street. *See id*., at 11-12. Officer Filler - a 12-year veteran of the Philadelphia Police Department - described this area as a high crime, high narcotics area in light of his experience. *See id*.

Based on the foregoing, we conclude this combination of factors provided a reasonable basis for Officer Filler to suspect that there might be a weapon in the vehicle. *See Commonwealth v. Tuggles*, 58 A.3d 840, 845

(Pa. Super. 2012) (holding sufficient reasonable suspicion to justify protective weapons sweep where traffic stop took place at night, in a high crime area, and police observed defendant make a furtive movement).

Moreover, we find Booker's reliance on our decision in ***Cartagena*** misplaced. There, two police officers pulled the defendant's car over at night due to a violation of the Motor Vehicle Code. ***See Cartagena***, 63 A.3d at 296. After one of the officers asked the defendant for his license and registration, the defendant "opened his center console, looked inside like he was going to retrieve paperwork [. . .] [and] then closed it." ***See id***. (internal quotations omitted). Because of his nervousness, police asked the defendant to step out of the vehicle. ***See id***., at 297. They then conducted a search of the driver's center console and recovered a firearm. ***See id***.

Importantly, the suppression court in ***Cartagena*** suppressed the evidence. ***See id***., at 297. In affirming the suppression court's ruling, the ***Cartagena*** panel concluded, under the particular circumstances in the case, the police did not possess a sufficient basis to conduct a search where the only evidence was that the stop occurred at night and the defendant was extremely nervous. ***See id***., at 304.

However, the circumstances here are entirely different from ***Cartagena***. First, the suppression court here denied suppression. We are therefore required to give deference to the suppression court's finding that the officers reasonably believed that Booker might have a weapon unless there is no

support in the record. Further, the present case involves a situation where Booker made two separate furtive movements, thus raising concerns for officer safety during a traffic stop in a high-crime area. Therefore, we find our decision in **Cartagena** is inapplicable in the current matter.

For the reasons discussed above, we find the record supports both the trial court's factual findings and its legal conclusions. Booker's only issue on appeal does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/13/20</u>