J-S30027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIL D. MCCLENNAN | : | |
| | : | |
| Appellant | : | No. 357 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 19, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0005585-2019

BEFORE: BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:         **FILED OCTOBER 20, 2021**

Jamil D. McClennan (Appellant) appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his non-jury conviction of, *inter alia*, firearms not to be carried without a license and possession of controlled substances[1] stemming from the stop of a vehicle in which he was a passenger. On appeal, Appellant argues the trial court erred in denying his motion to suppress evidence recovered from the pat-down search of his person absent reasonable suspicion that criminal activity was afoot or articulable facts that he was armed and dangerous. For the reasons below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S. § 6106(a)(1), 35 P.S. § 780-113(a)(16).

The trial court summarized the facts relevant to this appeal, as developed during the suppression hearing, as follows:

In the early morning hours of September 13, 2019, Lancaster City Police Officers Jacob Bingham and Brandon McCormick were patrolling the area of West King and West Strawberry Streets in Lancaster City, Pennsylvania. At 2:24 a.m., Officers Bigham and McCormick observed a blue PT Cruiser turn right without using a turn or hand signal and, consequently, proceeded to pull over the vehicle. Both officers exited the patrol car and approached the stopped vehicle. Officer Bingham testified that when he reached the driver's side of the vehicle, he "got blasted with hot air" coming out of the driver's partially-opened window and experienced "marijuana odor [ ] being pushed into [his] face." As Officer Bi[n]gham began speaking with the driver, he noticed that there were three passengers in the vehicle — one in the front passenger's seat, one seated in the back passenger's side seat, and one, later identified as [Appellant], seated in the back middle seat.

Officer Bingham finished collecting general information from the driver and, as he made his way back to his patrol car, told Officer McCormick that he planned to remove all occupants from the vehicle because of the smell of marijuana he detected through the driver's side window. In anticipation of removing all occupants from the vehicle, Officer Bingham made a call via radio transmission to request that more officers respond to the scene.

One of the additional officers who arrived on the scene was Officer J Hatfield. After speaking with Officer Bingham about the general details of the stop, Officer Hatfield approached the passenger side of the vehicle and observed [Appellant] sitting in the middle back seat. Officer Hatfield also testified at the suppression hearing and noted that although it was still dark when he arrived on the scene, another officer was illuminating the interior of a vehicle with a flashlight such that Officer Hatfield was able to observe [Appellant] "moving around and reaching around inside the car." Specifically, Officer Hatfield recalled observing [Appellant] "reaching to the left" where Officer Hatfield could not see and "then at one point in time [Appellant] brought his right hand and put it, like, right in his crotch area in the front, like, waistband/zipper area of his pants."

Consequently, Officer Hatfield advised [Appellant] to put his hands on the headrest in front of where he was seated, noting that his main concern at the time was that the area where [Appellant] reached "is known for people keeping weapons, mainly handguns." Officer Hatfield, who at the time of the at-issue stop had 16 years of experience as an officer and regularly patrolled the area where the stop occurred, testified that the area was "the busiest sector of the City with violent crime and drug action" and that his "first immediate thought" upon observing [Appellant] reach to his waistband area was that [Appellant] may have a firearm on his person.

Based on these observations, Officer Hatfield removed Defendant from the vehicle. Officer Hatfield testified that he "did not want to have to engage [Appellant] in a deadly force situation," which would have put the passenger seated between [Appellant] and Officer Hatfield at risk. Officer Hatfield proceeded to perform a pat[-]down to check for weapons and detected a "hard object in the actual crotch of [Appellant's] pants" and, when he "actually checked there," he "felt the . . . grip of a firearm."

After feeling the firearm, Officer Hatfield alerted the other officers on the scene that "there was a gun in [Appellant's] waist" and, after gaining control of [Appellant], the officers removed the firearm, which had an obliterated serial number. Upon further search, [Appellant] "also had in his possession controlled substances and drug paraphernalia including: two blue wax sleeves containing heroin, one clear plastic corner-tied bag containing crack cocaine, one backwoods cigar pouch containing marijuana, three empty clear plastic sandwich bags, and multiple empty and unused one-inch square blue in color zip loc style bags."

Trial Ct. Op., 5/11/01, at 2-4 (record citations omitted).

Appellant was subsequently charged with firearms not to be carried without a license, possession of a firearm with altered manufacturer's number, three counts of possession of controlled substances, and one count each of possession of a small amount of marijuana and possession of drug

paraphernalia.[2]  On December 17, 2019, Appellant filed an omnibus pretrial motion, arguing that the pat-down search of his person was illegal, and, therefore, the evidence recovered as a result of that search — a firearm and drugs — should be suppressed.  **See** Appellant's Omnibus Pretrial Motion, 12/17/19, at 2-3 (unpaginated).[3]  The trial court conducted a suppression hearing on January 9, 2020,[4] and later denied Appellant's motion on February 10th.  The case proceeded to a stipulated bench trial on November 3, 2020, at the conclusion of which, the trial court found Appellant guilty of all charges.[5]  On February 19, 2021, the trial court sentenced Appellant to an aggregate term of 42 to 84 months' imprisonment.  This timely appeal follows.[6]

Appellant's sole issue on appeal challenges the trial court denial of his suppression motion:

> Did the trial court err in denying [Appellant's] Omnibus Pre Trial Motion to Suppress where police officers did not have reasonable suspicion to believe that criminal activity was afoot or articulable facts that [Appellant] was armed and dangerous where

---

[2] **See** 18 Pa.C.S. § 6110.2(a); 35 P.S. § 780-113(a)(31), (32).

[3] We note Appellant challenged **only** the search of his person, and not the propriety of the initial traffic stop.

[4] The suppression transcript is mislabeled as having been conducted on January 9, **2019**.

[5] One count of possession of controlled substances was nol prossed before the verdict.  **See** Court Sheet, 11/3/20.

[6] Appellant complied with the trial court's directive to file a concise statement of errors complained of on appeal.

[Appellant], a passenger in a vehicle stopped for a turn signal violation, was removed from the vehicle and frisked illegally?

Appellant's Brief at 4.[7]

Our standard of review of an order denying a pretrial suppression motion is well-settled:

> [We] "consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." However, . . . "where the appeal . . . turns on allegations of legal error, the suppression court's conclusions of law are not binding" as it is [the appellate court's] duty "to determine if the suppression court properly applied the law to the facts."

*In Interest of A.A.*, 195 A.3d 896, 901 (Pa. 2018) (internal citations omitted). Moreover, our scope of review is limited to "the evidence presented at the suppression hearing." *Commonwealth v. Wright*, 255 A.3d 542, 548 (Pa. Super. 2021).

In the case before us, Appellant does not contest the legality of the initial traffic stop for the turn signal violation. *See* Appellant's Brief at 10; N.T. Suppression H'rg, 1/9/19, at 5. Instead, he argues the officers unlawfully frisked him in the absence of reasonable suspicion that criminal activity was afoot, or articulable facts that he was armed and dangerous. Appellant's Brief at 11.

---

[7] The Commonwealth did not file a responsive brief in this appeal.

Appellant maintains that the only basis for the vehicle stop was the traffic violation — there was no report that the occupants had engaged in criminal behavior. Appellant's Brief at 13-14. Further, he emphasizes that Officer Bingham, who initiated the stop, did not "see any behavior from [Appellant] that gave him concern," particularly, any furtive movements. *See id.* at 14. Although he acknowledges an officer conducting a traffic stop may order the driver **and** passengers out of the vehicle, Appellant asserts that same authority does not permit a frisk of the passengers absent reasonable suspicion. *See id.* at 14-15. Moreover, Appellant contends the following facts did not provide the requisite reasonable suspicion in the present case: (1) the fact that Officer Bingham smelled marijuana emanating from the vehicle; (2) the fact that the front seat passenger (not Appellant) appeared nervous; and (3) the fact the stop was in a "high crime area." *See id.* at 15-17 (odor of marijuana may have justified further investigation, but not frisk of passenger; suspicious behavior of front seat passenger did not justify frisk of back seat passenger; police initiated stop of vehicle while driving through high crime area).

Although Appellant recognizes that Officer Hatfield, who arrived after the stop, testified that he observed Appellant make furtive movements, Appellant emphasizes that none of the other officers "noticed anything alarming or suspicious regarding" Appellant, and Officer Hatfield "never indicate[d] to other officers present that he ha[d] a concern about" Appellant." Appellant's Brief at 19. Further, he insists Officer Hatfield's observation of

Appellant's "hand placement . . . in his crotch area" was insufficient "to justify

the frisk." *Id.* Rather, Appellant maintains that even before Officer Hatfield's

arrival, the officers "pre-planned" to frisk all the passengers "as a matter of

course when being removed from the vehicle." *Id.* at 20. Accordingly, he

contends the frisk was unlawful, and the evidence recovered therefrom should

be suppressed.

The trial court succinctly rejected Appellant's suppression claim as

follows:

> [D]uring the suppression hearing, Officer Hatfield articulated sufficient facts to show that he had reasonable suspicion to believe that [Appellant] was armed and dangerous. Officer Hatfield arrived on the scene in the dark, early hours of the morning. Officer Hatfield was very familiar with the neighborhood; in his 16 years with the Lancaster City Police, he frequently patrolled the area where the stop occurred and testified that he knew the neighborhood to be one of the busiest sectors of the City for violent crime and drug activity. When Officer Hatfield approached the stopped [vehicle] and observed [Appellant] in the back seat, he saw [Appellant] moving around and reaching around inside the car and subsequently saw [Appellant] bring his right hand to the waistband-area of his pants.
>
> Pennsylvania case law clearly indicates that the combination of these factors would warrant a reasonably prudent officer in believing that his safety or that of others — here, a passenger seated between Officer Hatfield and [Appellant] — was in danger. Officer Hatfield possessed reasonable suspicion that [Appellant] was armed and dangerous and, therefore, Officer Hatfield, did not violate [Appellant's] constitutional rights when he removed [Appellant] from the vehicle and patted him down.

Trial Ct. Op. at 6-7.

Our review of the record supports the trial court's ruling. It is well-

established that "following a lawful traffic stop, an officer may order both the

- 7 -

driver **and passengers** of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa. Super. 2007) (emphasis added). *See also Commonwealth v. Malloy*, 257 A.3d 142, 150 (Pa. Super. 2021) ("[P]olice officials may compel passengers to exit a lawfully stopped vehicle."). Nevertheless, in order to justify a frisk — or limited pat-down search for weapons — an officer "must reasonably believe that his safety or the safely of others is threatened." *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa. Super. 2011). "In order to determine whether the police had reasonable suspicion, the totality of the circumstances — the whole picture — must be considered." *Id.*

Officer Hatfield's testimony at the suppression hearing provides sufficient justification for his pat-down of Appellant. When he arrived at the scene, Officer Hatfield was advised by Officers Bingham and McCormick that (1) they initiated a vehicle stop, (2) one of the passengers — not Appellant — was a "known gang member," (3) "the interior of the vehicle smelled like marijuana[,]" and (4) there [were] four or five occupants inside of the car." N.T., Suppression H'rg, at 31-32. He also testified the stop occurred in his "primary area of patrol" for the past eight years — the "busiest section of the City [for] violent crime and drug action." *Id.* at 32. Officer Bingham told him they were going to direct the passengers to exit the vehicle to investigate the odor of marijuana. *Id.* at 33. Officer Hatfield then proceeded to the passenger side of the vehicle as Officer Bingham removed the driver, and

Officer McCormick removed the front seat passenger. **See id.** at 33-34. Officer Hatfield testified that, at that time, he observed Appellant, who was sitting in the middle rear seat, "moving around and reaching around inside the car." **Id.** at 34. He explained:

> [Appellant] was reaching to the left where I could not see, and then at one point in time he brought his right hand and put it, like, right in his crotch area in the front, like, waistband/zipper area of his pants.

**Id.** at 35. Officer Hatfield testified that Appellant's actions made him concerned for his own safety, as well as the safety of the other passenger sitting beside Appellant in the back seat. **See id.** He stated that the front waistband area, where Appellant was reaching, is "known" as an area where people keep a handgun. **See id.** at 35-36. After removing Appellant from the vehicle, Officer Hatfield conducted a pat-down search, and felt "a hard object in the actual crotch of [Appellant's] pants." **Id.** at 36. He asked Appellant what the object was, and Appellant "tensed up." **Id.** At that time, Officer Hatfield "came around to the front . . . of that area, and . . . felt the . . . grip of a firearm." **Id.** at 36-37. In addition to the officers' testimony, the Commonwealth played for the court Officer Hatfield's body cam footage of the incident. **See id.** at 40-46.

Thus, we conclude that the totality of the circumstances — including the time and location of the traffic stop, and Appellant's furtive movements inside the vehicle, which Officer Hatfield testified was, in his experience, indicative of the secretion of a handgun — provided sufficient justification for Officer

Hatfield's limited pat-down search of Appellant for weapons. ***See Simmons***, 17 A.3d at 403-04 (officer's observation of passenger's furtive movements — reaching down towards floor and then across chest — during lawful traffic stop at night in high crime area, justified limited frisk for weapons). The fact that Officer Bingham may have intended to remove and search all of the passengers based upon the odor of marijuana is of no moment. Officer Hatfield provided articulable facts justifying his belief that Appellant might be armed and dangerous.[8] Accordingly, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2021

---

[8] We emphasize that the trial court also had the benefit of Officer Hatfield's body cam video, which recorded Appellant's furtive movements inside the vehicle. ***See*** N.T., Suppression H'rg, at 45-46.