J-A14001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EDWARD LEE PARKER, III | : | |
| | : | |
| Appellant | : | No. 1371 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 22, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008492-2016

BEFORE:  SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 27, 2021**

Appellant, Edward Lee Parker, III, appeals from the judgment of sentence entered on August 22, 2018, in the Court of Common Pleas of Allegheny County.  We affirm.

This appeal stems from a motor vehicle stop and the trial court's denial of Appellant's related suppression motion.  The trial court summarized the procedural history of this case as follows:

> Appellant was charged by criminal information (CC 201608492) with one count each of person not to possess[1]; carrying a firearm without a license[2]; possession with intent to deliver a controlled substance[3]; possession of a controlled substance[4]; possession or distribution-marijuana or hashish[5]; driving while operating privilege is suspended or revoked[6]; and windshield obstructions and wipers.[7]
>
> [1] 18 Pa.C.S.A. §6105(a)(1);
> [2] 18 Pa.C.S.A. §6106(a)(1);
> [3] 35 [P.S.] §780-113(a)(30);
> [4] 35 [P.S.] §780-113(a)(16);

    [5] 35 [P.S.] §780-113(a)(31);
    [6] 75 Pa.C.S.A. §1543(a);
    [7] 75 Pa.C.S.A. §4524(e)(1).

    Appellant filed a suppression motion which was denied after a hearing on November 17, 2017. On January 8, 2018, [the trial court judge] recused [himself], and the case was reassigned to the Honorable Beth Lazzara. On May 24, 2018, Appellant proceeded to a non-jury trial and was found guilty of person not to possess, carrying a firearm without a license, and the summary windshield obstructions and wipers. The charge of driving while operating privilege is suspended or revoked was withdrawn.

    On August 22, 2018, Appellant was sentenced as follows:

    Count one: person not to possess — a period of incarceration of a year less a day to two years less two days and four years' probation;

    Count two: carrying a firearm without a license-four years' probation concurrent with the probation imposed at count one; and

    Count seven: windshield obstructions and wipers-a fine of $25.

    This timely appeal follow[ed].

Trial Court Opinion, 6/17/19, at 2-3. Appellant and the trial court complied

with Pa.R.A.P. 1925.

    On appeal, Appellant presents the following issues for our review:

    I. Whether the suppression court erred in denying [Appellant's] motion to suppress where the traffic stop of [Appellant's] vehicle was not supported by reasonable suspicion to believe that he had violated 75 Pa.C.S.A. § 4524(e) (Windshield Obstructions and Wipers; Sun Screening and Other Materials Prohibited) of the Motor Vehicle Code, in violation of [Appellant's] rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution?

II.     Whether the suppression court erred in denying [Appellant's] motion to suppress where the police searched [Appellant's] vehicle without a warrant, and no valid exception to the warrant requirement applied based on the facts and circumstances presented (such as the automobile exception, a search pursuant to *Michigan v. Long*, 463 U.S. 1032 (1983) and its progeny, a consent search, or an inventory search), in violation of [Appellant's] rights under the Fourth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 5.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . .  Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted).  "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony."  **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006).  Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.  **In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013).

In his first issue, Appellant argues that the trial court erred in denying his suppression motion because the stop was not supported by reasonable suspicion. Appellant's Brief at 31. Appellant acknowledges that where a violation of the Motor Vehicle Code is suspected, but a traffic stop is necessary to further investigate whether a violation has occurred, the police must possess only reasonable suspicion to make the stop. *Id.* at 31. Appellant argues, however, that in the case *sub judice*, Officer Blake Maloney admitted that he could see through the windows of Appellant's vehicle, that Officer Maloney did not carry window tint cards or any other device by which to investigate a violation of Section 4524(e), and Officer Maloney undertook no investigation to determine whether Appellant's windows were illegally tinted. *Id.* at 31-32. Appellant also posits that prior to the stop, Officer Maloney was surveilling a known drug dealer's house and pulled Appellant over after seeing Appellant leave the drug dealer's house. *Id.* at 32. Accordingly, Appellant argues that given these circumstances, the Commonwealth failed to demonstrate that Officer Maloney had reasonable suspicion to believe that Appellant's vehicle was in violation of Section 4524(e). *Id.*

Section 6308 of the Motor Vehicle Code provides that when a police officer

> has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information

as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

... ["]While an actual violation need not be established, a reasonable basis for the officer's belief is required to validate the stop."

*Commonwealth v. Muhammed*, 992 A.2d 897, 900–901 (Pa. Super. 2010)(citations omitted).

The relevant section of the motor vehicle code addressing window tint provides, in relevant part, as follows:

**(e) Sun screening and other materials prohibited.—**

(1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

(2) This subsection does not apply to:

(i) A vehicle which is equipped with tinted windows of the type and specification that were installed by the manufacturer of the vehicle or to any hearse, ambulance, government vehicle or any other vehicle for which a currently valid certificate of exemption has been issued in accordance with regulations adopted by the department.

(ii) A vehicle which is equipped with tinted windows, sun screening devices or other materials which comply with all applicable Federal regulations and for which a currently valid certificate of exemption for medical reasons has been issued in accordance with regulations adopted by the department.

(3) A certificate of exemption shall be issued by the department for a vehicle which is:

(i) Registered in this Commonwealth on the effective date of this subsection and is equipped with a sun screening device or other material prohibited under paragraph (1) on the effective date.

(ii) Equipped with tinted windows, sun screening devices or other materials for a physical condition that makes it necessary to equip the motor vehicle with sun screening material which would be of a light transmittance or luminous reflectance in violation of this section.

(A) A certificate of exemption for medical reasons shall be issued only if the owner or registrant of the vehicle, or a person residing in the household of the owner or registrant who regularly drives or is driven in the

vehicle, suffers from a physical condition determined by the department, in consultation with the Medical Advisory Board, to justify the exemption.

(B) Any person requesting an exemption for medical reasons shall have his physical condition certified to the department by a licensed physician or optometrist.

(4) A certificate of exemption issued under this subsection shall be carried in the vehicle and displayed on request of a police officer.

75 Pa.C.S. § 4524(e)(1)–(4).

The trial court issued the following findings of fact with respect to the suppression motion and hearing:

On November 8th, 2015, Duquesne Police Officer Blake Maloney was conducting a surveillance of Vince Felder's home in the City of Duquesne. Felder himself was known to be a gun carrying drug dealer and the house itself a hotbed of criminal activity in that same regard. At approximately 4:00 a.m., Officer Maloney observed [Appellant], and one Tyrone Surratt, leave the house again at 4:00 in the morning. Officer Maloney observed [Appellant] and Tyrone Surratt leave the home, and the two individuals entered the Mercedes vehicle; [Appellant] into the driver's side of the vehicle and Surratt into the front passenger seat.

The vehicle left the parking lot, adjacent to the Felder home, onto Kennedy Avenue. As the vehicle exited that parking lot, Officer Maloney observed a heavy and illegal amount of tint on the four side windows of [Appellant's] vehicle, a potential violation of the Pennsylvania Motor Vehicle Code laws. Based on what he perceived to be an illegal amount of window tint, I believe it is Section 4524 of the Vehicle Code, Officer Maloney initiated a traffic stop on Homestead-Duquesne Road, itself being a high crime

area. Officer Maloney activated the lights of his vehicle and also hit the siren of his marked police vehicle one time to initiate that traffic stop.

[Appellant] pulled over, and when he did so, the car was actually parked illegally, but nonetheless, a stop unfolded as follows, noting also that Officer Maloney was the only officer on the scene at that time. Maloney, before leaving his vehicle to approach [Appellant's] vehicle, activated the spotlight on his car to illuminate better [Appellant's] vehicle.

Officer Maloney exited his vehicle and approached [Appellant's] vehicle from the driver's side, with a flashlight, and also as noted, to aid in the illumination from his own vehicle, the spotlight that is. As he approached the driver's side of the vehicle, he observed [Appellant] fully extend himself into the back seat of the vehicle toward the rear passenger seat. That is, he reached between the driver and passenger's area. That would be to the driver's right, obviously. This caused an immediate concern [for] Officer Maloney, because of the high crime area, the inherent danger of traffic stops in which officers have been seriously injured and/or killed. Also the potential association with Felder and that household in Duquesne where the two persons originally left from.

When Officer Maloney reached the driver's side window, [Appellant] stopped reaching and had returned to the front seat and faced Officer Maloney. Simultaneous with this activity, the passenger, Surratt, was scooping material and throwing it out the passenger side window. Officer Maloney perceived and believed the substance to be marijuana, by its color and composition, and again throwing it out the passenger side window.

A fellow Duquesne officer, Officer Kuks, was arriving near this point in time as backup for Officer Maloney. At this point in time, Officer Maloney asked both occupants for identification cards. Both [Appellant] and Surratt complied. Neither had driver's licenses, but had Pennsylvania ID cards. Officer Maloney was able to run the information through NCIC, as Officer Kuks kept the situation stable or static. Both Surratt and [Appellant] came back as having suspended licenses.

And at that juncture, of course, as neither individual had a valid driver's license, and the vehicle was parked illegally, it would have to be towed. Officer Maloney asked [Appellant] to turn off

- 8 -

the vehicle and step out of the vehicle for a weapons pat down. [Appellant] complied and was patted down with negative results.

Officer Maloney next conducted a weapons pat down of Surratt. A suspected marijuana blunt was recovered from Surratt. He was cited for Disorderly Conduct and released from the scene. Officer Maloney then inspected the interior of the vehicle, and in the area to which [Appellant] had reached and extended himself he found a brown lunch bag with the contents suspected crack cocaine, marijuana, a handgun, sandwich baggies, a digital scale, from again the rear passenger seat floorboard area where [Appellant] had been reaching upon Officer Maloney's approach.

Subsequent to them being detained, an inventory search of the vehicle was conducted. In that regard, [Appellant] was arrested and the vehicle was towed.

Trial Court Opinion, 6/17/19, at 4-7.

The trial court's findings of fact are supported by the testimony provided at the suppression hearing. Moreover, the trial court's findings of fact support the conclusion that Officer Maloney stopped the vehicle on the basis of a suspected motor vehicle violation, specifically heavy tint on the car windows. As the relevant statute provides, a person may not "drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S. § 4524(e)(1). As noted, the statute also provides for exceptions to that prohibition by allowing for certificates of exemption. 75 Pa.C.S. § 4524(e)(3). Further, the certificate of exemption "shall be carried in the vehicle and displayed on request of a police officer." 75 Pa.C.S. § 4524(e)(4). Thus, when Officer Maloney observed the vehicle and its heavily tinted windows, he had reasonable suspicion to stop

the vehicle and conduct further investigation as to whether the operator possessed a certificate of exemption. Officer Maloney's testimony supports the conclusion that was his intent.

Appellant's assertion that Officer Maloney admitted that he could see into the car is unsupported by the record. Officer Maloney testified that the heavily tinted windows prohibited him from seeing how many occupants were in the vehicle. N.T., 7/25/17, at 21. Based on the amount of window tinting, Officer Maloney conducted the traffic stop. *Id.* Officer Maloney testified that after he had stopped Appellant's car, he directed the spotlight from his police cruiser into the back of Appellant's vehicle. *Id.* at 38. Even then, with the additional use of his flashlight, Officer Maloney explained: "[I could n]ot fully [see]. But, yes, I could see better than I could before." *Id.* at 38. Thus, the evidence of record contradicts Appellant's assertion that Officer Maloney admitted he could see into the vehicle. Therefore, Appellant's claim that the officer's basis for stopping the vehicle because he could not see into the vehicle as a result of heavy window tinting was unsupported by the record is baseless.

Moreover, the trial court "determined that the stop was not pre-textual in nature as the record, based upon the totality of the circumstances, supported that the officer initiated the stop in good faith for a motor vehicle violation." Trial Court Opinion, 6/17/19, at 8. Accordingly, we agree with the trial court that the stop was lawful. Therefore, the trial court did not err in

denying Appellant's suppression motion on this basis. Appellant is entitled to no relief on this claim.

In his second issue, Appellant argues that the trial court erred in denying his motion to suppress because Officer Maloney did not have a warrant to search Appellant's vehicle, and no exceptions to the warrant requirement existed to justify the search of the vehicle. Appellant's Brief at 46. As such, Appellant argues that trial court erred in failing to suppress, as fruit of the poisonous tree, the firearm that Officer Maloney recovered during the search of Appellant's vehicle. *Id.* at 46-47.

This Court has explained:

[I]t is hornbook law that the Fourth Amendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.' Warrantless searches and seizures . . . are unreasonable *per se*, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. One such exception, the ***Terry***[1] "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot."

***Terry*** further held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence."

---

[1] ***Terry v. Ohio***, 392 U.S. 1, 30 (1968).

In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity.

The *Terry* totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. Moreover, the principles of *Terry* apply to all occupants of the stopped vehicle, not just the driver. Indeed, as we have observed, roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.

*Commonwealth v. Simmons*, 17 A.3d 399, 402-403 (Pa. Super. 2011).

In addressing this issue, the trial court provided the following analysis:

Immediately upon approaching the vehicle, the officer noticed Appellant making furtive movements (i.e. reaching from the driver's side area toward the rear floor of the passenger seat, and also noticed the passenger scooping what the officer, based on his training and experience, believed to be marijuana from his lap and throwing it out the window). These actions, coupled with the time of day, it being a high crime area, and Appellant's association with the passenger (a known gun carrying drug dealer) and the passenger's house (which was known for criminal activity), all led to the officer's reasonable belief that criminal activity was afoot. (F.F.C.L. 9-10). *See Commonwealth v. Simmons*, 17 A.3d 399, 404 (Pa.Super. 2011)(holding that that officer's observations of furtive movements during the scope of a lawful stop for a motor vehicle violation was sufficient to sustain his reasonable belief that his safety may be in danger and justified the *Terry* frisk).

- 12 -

Neither Appellant nor the passenger had a valid driver's license, which at a minimum would have warranted the vehicle being towed. Based upon the officer's observations of the activity taking place in the vehicle, i.e. Appellant reaching into the backseat area of the vehicle, it was reasonable to believe Appellant was possibly reaching for a weapon or attempting to secret one. These actions clearly presented a danger to the officer during the traffic stop. As such, the officer is permitted to remove the occupants to conduct a search for weapons. *See Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994) (holding that an officer may conduct a protective sweep of a vehicle where he believes there are sufficient facts that would lead a reasonably prudent person to believe his safety was in danger). As it applies to a pat-down search, the fact that no weapon was found during the pat-down is of no merit as it is the reasonable belief, based upon the totality of the circumstances, that the person may have had a weapon which is controlling.

Trial Court Opinion, 6/17/19, at 8-9.

The trial court's conclusion is supported by evidence of record. As we explained earlier, the vehicle was lawfully stopped for purposes of investigating a potential motor vehicle violation. The totality of circumstances witnessed by Officer Maloney led him to believe that the passengers of the vehicle could be armed and dangerous. Therefore, Officer Maloney had valid grounds to conduct a protective frisk of the passengers of the vehicle. **Simmons**, 17 A.3d at 403. Additionally, Officer Maloney was authorized to conduct a protective sweep of the interior of the vehicle. **Commonwealth v. Morris**, 644 A.2d 721, 723 (Pa. 1994) ("The search of the passenger compartment of an automobile . . . is permissible if the police officer possesses a reasonable belief . . . that the suspect is dangerous and the suspect may

gain immediate control of weapons."). Accordingly, the trial court did not err by denying Appellant's motion to suppress on this basis.

Moreover, even if the items in the vehicle were not recovered pursuant to a lawful *Terry* search, such evidence would have been inevitably discovered during the inventory search. The inevitable discovery doctrine provides:

> [E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence....[I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009).

Accordingly, because the vehicle was parked illegally, and neither Appellant nor the passenger had a valid driver's license, the vehicle would have been towed and impounded. As such, the firearm in the vehicle would have been procured pursuant to a lawfully executed inventory search. *See, e.g., Bailey*, 986 A.2d 863 ("[B]ecause the police conduct routine inventory searches whenever a car is towed, and an inventory search includes looking into obvious storage places . . . the gun would have inevitably been

discovered absent police error or misconduct.").[2]  Appellant is entitled to no

relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/27/2021

---

[2] Similarly, to the extent that the officer's warrantless search could be viewed as not justified by an exigency under our Supreme Court's recent decision in **Commonwealth v. Alexander**, ___ A.3d ___, 30 EAP 2019 (Pa. decided December 22, 2020), because the car was to be impounded and towed, the evidence would have been inevitably discovered.